IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

H.C., AN INFANT AND MINOR BY AND
THROUGH HIS PARENTS AND NEXT
FRIENDS C.C. AND M.C., C.C.,
INDIVIDUALLY, AND M.C.
INDIVIDUALLY,

    Plaintiffs,

v.                                        Case No. 4:20-cv-00153

MATHEWS COUNTY SCHOOL BOARD,
NANCY WELCH, LAUREL BYRD, APRIL
EDWARDS, DENISE MCCUISTON, AND
GABRIELLE "GABBY" CROWDER,

    Defendants.

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS MATHEWS COUNTY SCHOOL BOARD, NANCY
## WELCH, LAUREL BYRD, AND DENISE MCCUISTON'S MOTION TO DISMISS

    Defendants Mathews County School Board ("School Board"), Nancy Welch, Laurel

Byrd, and Denise McCuiston, by counsel and pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, submit this memorandum in support of their Motion to Dismiss the Complaint

filed by Plaintiffs H.C., who sues by and through his parents, C.C. ("Mr. C.") and M.C. ("Mrs.

C."), and Mr. C. and Mrs. C. individually.[1]

## INTRODUCTION

    The Plaintiffs in this action, H.C., a minor child, and his parents Mr. and Mrs. C., assert

numerous claims against Defendants School Board, Welch, Byrd, and McCuiston[2] arising out of

a threat assessment that was conducted to determine whether H.C. posed a threat of harm to

---

[1] While Plaintiffs appropriately identify H.C. by his initials, in accordance with Rule 5.2 of the Federal Rules of Civil Procedure, Plaintiffs C.C. and M.C., who are adults, did not obtain leave of court to proceed using only their initials.
[2] Two additional individual defendants, Edwards and Crowder, are represented by other counsel.

another student, C.B.  Count I, asserted on behalf of all three Plaintiffs against all six Defendants asserts procedural and substantive due process claims.  Count II, asserted on behalf of all the Plaintiffs against all six Defendants asserts a conspiracy claim under 42 U.S.C. § 1985.  Count III to assert a state law claim of defamation by H.C. against the Individual Defendants.  Count VI[3] asserts a state law claim of intentional infliction of emotional distress by all three Plaintiffs against the Individual Defendants.  Count VII asserts a state law claim of gross negligence by all three Plaintiffs against the Individual Defendants.

For the reasons set forth below, Plaintiffs fail to allege facts sufficient to make out any claim for which relief can be granted as against Defendants School Board, Welch, Byrd, or McCuiston.  Accordingly, Plaintiffs' claims against these Defendants must be dismissed.

## FACTUAL BACKGROUND

This case arises out of a threat assessment that was conducted by certain employees of the School Board, including Defendants Welch, Byrd, McCuiston and others, including Defendant Edwards, pursuant Va. Code § 22.1-79.4.  See Doc. 1 ("Compl.,"), generally. Section 22.1-79.4 of the Code of Virginia requires each school board in Virginia to adopt a policy establishing a threat assessment team or teams for the purpose of " the assessment of and intervention with individuals whose behavior may pose a threat to the safety of school staff or students."  The superintendent of each school division is charged with establishing and overseeing the threat assessment teams, which must include "persons with expertise in counseling, instruction, school administration, and law enforcement."  Id.  The threat assessment team is required to "identify members of the school community to whom threatening behavior

---

[3] Counts IV and V assert claims against Defendant Edwards only and are not, therefore, the subject of the instant motion.

should be reported." Id.  Section 22.1-79.4 explicitly provides that it does not "preclude school division personnel from acting immediately to address an imminent threat."  Id.

Plaintiff H.C. was enrolled in Ware Academy, a private school, from 2015 to 2019. Compl., ¶ 17.  His parents sought to enroll him in the Mathews County Public Schools beginning in 2019.  Id. at ¶ 21.  Defendant Crowder's son, C.B. had previously "falsely reported" that H.C. attempted to assault him and threatened him with a knife.  Id. at ¶¶ 39, 41.  Upon learning of H.C.'s impending enrollment, the Defendants convened the threat assessment team.  Id. at ¶ 58. The threat assessment team met on August 27, 2019 and concluded that H.C. posed an "imminent threat" of harm.  Id. at 73.  The threat assessment team also determined that H.C. would be provided a homebound teacher to provide educational services for core subjects and that H.C. must attend counseling and undergo psychological and behavioral evaluations.  Id. at ¶ 74.  The threat assessment team also indicated that it would reconvene in two months to review and re-assess.  Id.

Rather than comply with the requirements of the threat assessment team, Plaintiffs withdrew H.C. to homeschool him and filed the instant lawsuit.

The Plaintiffs' complete is replete with conclusory allegations and allegations regarding the Defendants collectively.  In many instances, it is impossible to discern which actions are allegedly attributable to which Defendants.  Indeed, there are scant allegations regarding any actions of the School Board: the School Board is alleged to have adopted Policy EBB, Compl., ¶ 61, to have been "notified" by McCuiston that "Defendants had commenced the threat assessment process against H.C.," Id. at ¶ 65, and to have forwarded Plaintiffs "appeal" to Welch. Id. at ¶ 85.  The Complaint is devoid of any other specific factual allegations related to the School Board.

3

The allegations related to Defendants Welch, McCuiston, or Byrd are similarly scant. All three individuals are alleged to have been colleagues with Crowder and Edwards and to have known plaintiffs, Id. at ¶¶ 8, 27, 29. It is alleged that all three were possibly aware of a meeting Crowder had with the Sheriff's office and of Kellar's closure of the matter, with which they allegedly disagreed Id. at ¶¶ 44, 53, and that they allegedly developed a "bias" against H.C. and participated on a threat assessment team with the alleged intent to punish H.C., which team ultimately concluded that H.C. posed an "imminent threat" of harm to C.B., Id. at ¶¶ 63, 64, 73.

In addition to the above, Defendant Welch is alleged to have sent the plaintiffs a letter in which she reiterated the need to comply with the threat assessment team's recommendations for counseling and evaluation, which letter was placed in H.C.'s file, Id. at ¶¶ 83-84, and finally that she informed the plaintiffs of the fact that there is no process for appealing a threat assessment team's determination. Id. at ¶ 86.

Defendant McCuiston is alleged to have also informed the School Board that a threat assessment had been conducted Id. at ¶ 65, met with Edwards on or about June 4, 2019 to discuss their objectives and strategy and share their dissatisfaction with Kellar's handling of the matter, Id. at ¶ 66, reported disciplinary infractions that H.C. committed at Ware Academy that former Headmaster Thomas subsequently denied ever happened, Id. at ¶¶ 69-70, and was aware of or complicit in Welch's placement of the threat assessment in H.C.'s student record, Id. at ¶ 130.

Defendant Byrd is alleged to have also communicated her concerns to the Commonwealth's Attorney, who responded that there was nothing he could do, Id. at ¶ 68, met with Mr. and Mrs. C. to discuss the threat assessment and erroneously told them that they could appeal to Welch, Id. at ¶¶ 76, 78, 79, made a report to Child Protective Services regarding alleged incidents at Ware Academy and about the failure of the plaintiffs to comply with

diversion requirements she believed had been imposed by Kellar, Id. at ¶ 8,1 and was aware of or complicit in Welch's placement of the threat assessment in H.C.'s student record.  Id. at ¶ 130.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007).  The mere possibility a plaintiff may have a cognizable claim is insufficient; well-pled allegations must nudge the claim "across the line from conceivable to plausible" to survive a motion to dismiss.  Id. at 570.  A "claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

While "[t]he court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take facts asserted therein as true," it does not need to "accept the legal conclusions, inferences, or arguments that are drawn from the facts."  Kelley v. United States, 580 F. Supp. 2d 490, 492 (E.D. Va. 2008) (citation omitted).  "Naked allegations" that consist of a "formulaic recitation of the necessary elements [] are no more than conclusions and therefore do not suffice."  McCleary-Evans v. Maryland Dep't of Transp., 780 F.3d 582, 585 (4th Cir. 2015) (quoting Iqbal, 556 U.S. at 678–79) (internal quotation marks omitted).

While the court does not ordinarily consider documents outside the complaint when ruling on a motion to dismiss, the Fourth Circuit has recognized that "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these documents is not disputed."  Witthohn v. Fed. Ins. Co., 164 F. Appx. 395, 396 (4th Cir. 2006); see also Gasner v. Dinwiddie, 162 F.R.D.

280, 282 (E.D. Va. 1995)); see also Elitharp-Martin v. Pulaski Cnty, Sch. Bd., 62 F. Supp. 3d

515, 518 (W.D. Va. 2014) ("Conversion [to summary judgment] is not required [] when the court

considers only exhibits attached to the complaint, or documents that are integral to the complaint

or incorporated by reference, as long as the authenticity of those documents in not in dispute.")

(quoting Witthohn, 164 F. Appx. at 396).

The Threat Assessment Report ("Report"), a copy of which is Exhibit 1 hereto, is integral

to Plaintiffs' Complaint, see Compl., generally.[4]  In their Complaint, Plaintiffs quote from the

Report at length. Id. at ¶ 74.  Statements in the Report for the basis of Plaintiffs' defamation

claims (Count III) and the threat assessment process, which culminated in the Report, underpins

each Count in the Complaint.  See id., generally.  Defendant Welch's September 11, 2019 letter

to Mrs. C. ("Letter"), a copy of which is Exhibit 2 hereto, is similarly integral to Plaintiffs'

claims.  Id at ¶¶ 83-84, 13-131.   Accordingly, both the Report and Letter should be considered

by this Court without converting the instant motion to one for summary judgment.  Witthohn,

164 F. Appx.at 396.

## **ARGUMENT**

I.      **Mr. and Mrs. C. are not proper plaintiffs and have no standing to assert claims in their own right.**

As a threshold matter, Mr. C. and Mrs. C. lack standing to pursue any of the claims

asserted in the instant complaint and they should be dismissed as plaintiffs in their own right.  To

satisfy Article III's standing requirements, a plaintiff must show (1) that he has suffered an injury

in fact; (2) that the injury is fairly traceable to the conduct of the defendant; and (3) the injury is

likely to be redressed by a favorable decision.  See, e.g., Lujan v. Defenders of Wildlife, 504

U.S. 555, 560 (1992); Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,

---

[4] Contemporaneously with the filing of their Motion to Dismiss, Defendants School Board, Welch, Byrd, and McCuiston are filing a motion seeking leave to file the Report under seal due to the sensitive nature of its contents.

528 U.S. 167, 180-81 (2000).  The injury must be "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  <u>Friends of the Earth</u>, 528 U.S. at 180.  The injury must affect the plaintiff in a personal and individual way.  <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1548 (2016).

Throughout the Complaint, the Plaintiffs reference actions that were allegedly taken against H.C. and rights belonging to H.C. that were allegedly infringed.  For example, Plaintiffs allege that H.C.'s was denied the right to receive a public education and that H.C.'s reputation was injured (Count I) and that Defendants conspired to deprive H.C. of his right to receive a public education (Count II).  These are rights that are held by H.C., not by his parents.  <u>See</u>, e.g., <u>Lucas v. Henrico County Public Sch. Bd.</u>, 2018 WL 4496487, *5 (E.D. Va. Sept. 19, 2018), aff'd and remanded on other grounds, <u>Lucas v. Henrico Cty. Public Sch. Bd</u>, 767 Fed. App'x 444, 447 (4th Cir. 2019).  Similarly, the Plaintiffs allege that Defendants made defamatory statements about H.C., not his parents (Count III),[5] that Defendants intended to inflict emotional distress by pursuing a threat assessment of H.C., not his parents (Count VI), and that Defendants engaged in gross negligence by violating a duty that was allegedly owed to H.C., not his parents (County VII).

Because none of the allegations in the Complaint implicate any right of Mr. C. or Mrs. C., nor any actions taken against them, as opposed to their son, Mr. C. and Mrs. C. lack standing and must be dismissed as parties to this action.

## II.     The official capacity claims against Defendants Welch and Byrd are duplicative of the claims against the School Board and should, therefore, be dismissed.

Defendants Welch and Byrd are sued in both the individual and official capacities.  The official capacity claims against both should be dismissed for the reasons below.

---

[5] While the heading to Count III states in parentheses "Plaintiff H.C. v. All Defendants Except Defendants [sic] MCSB," the allegations in Count III refer to Plaintiffs collectively, Compl., ¶¶ 160 161.

It is well-settled that official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dep't of Social Servs., 436 U.S. 658, 690, n.55 (1978). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). Thus, claims against a superintendent and other administrators are duplicative of the claim against the school board and must be dismissed. See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (holding that a claim against a school superintendent in his official capacity "is essentially a claim against the [School] Board and thus should be dismissed as duplicative"); Myers v. Loudoun Cnty. Sch. Bd., 500 F. Supp. 2d 539, 554 (E.D. Va. 2007) (dismissing school superintendent sued in his official capacity because, "[w]hen sued in their official capacities, 'suits against officers of an entity generally represent only another way of pleading a suit against the entity of which the officer is an agent.'") (citation omitted); M.S. v. Fairfax Cnty. Sch. Bd., No. 1:05CV1476(JCC), 2006 WL 721372, at *3 (E.D. Va. March 20, 2006) (dismissing claims against school administrators in their official capacities because such claims were "duplicative" of the claims against the school board).

Welch is the Superintendent of the Mathews County Public Schools, Compl., ¶ 5, and Byrd is the principal of Thomas Hunter Middle School, Id. at ¶ 6. Both are employees of the School Board. Id. at ¶¶ 5-6. The claims against Welch and Byrd in their official capacities are, therefore, duplicative of the claims against the School Board and should be dismissed. Myers, 500 F. Supp. 2d at 554; M.S., 2006 WL 721372, at *3.

**III.    The procedural due process claims asserted in Count I must be dismissed as against the School Board, Welch, Byrd, and McCuiston.**

In Count I, Plaintiffs assert a procedural due process claim pursuant to 42 U.S.C. § 1983. "To state a procedural due process claim, plaintiff must allege: (1) that he possessed a protected liberty or property interest; (2) that the state or its agents deprived him of this interest; and (3) that this deprivation was effectuated without constitutionally sufficient process." Doe v. Rector and Visitors of George Mason University, 132 F. Supp. 3d 712, 719 (E.D. Va. 2015). Plaintiffs assert that they have a property interest in H.C.'s education.[6] Compl., ¶ 106. Plaintiffs also assert that they have liberty interests in "their good names, reputations, honor, and integrity and in the freedom to engage in educational and employment opportunities."[7] Compl., ¶ 117. For the reasons set forth below, Plaintiffs' property interest and liberty interests claims must fail.

**A.    Plaintiffs' property interest claim must be dismissed because H.C. has not been deprived of his right to receive a public education and because H.C. did receive sufficient process.**

1.    H.C. has not been deprived of his right to receive a public education.

"[A] school deprives a student of his or her property interest in public education only when the school effectuates a 'total exclusion from the educational process.' M.B. by and through Brown v. McGee, 2017 WL 1364214, *7 n.10 (E.D. Va. 2017) (citing Goss v. Lopez, 419 U.S. 565, 573-74 (1975); see also Lindsey v. Matayoshi, 950 F. Supp. 2d 1159, 1169 (D. Haw. 2013) ("a student who is removed from her regular public school, but is given access to an alternative education program, has not been denied her entitlement to public education"). Plaintiffs have not, and cannot, allege a total exclusion from the educational process because Plaintiffs concede, as they must, that H.C. was to be provided homebound instruction, Compl., ¶

---

[6] This allegation underscores the Defendants' argument, supra, that Mr. and Mrs. C. are not proper plaintiffs in their own right. It is H.C. alone who has a property interest in public education. Lucas, 2018 WL 449487, *5.

[7] Likewise, the actions of the Defendants as alleged in the Complaint do not even arguably implicate the liberty interests of either Mr. or Mrs. C. Thus, again, they lack standing.

111, and that "[a] homebound teacher will be assigned to deliver educational services to [H.C.] at a neutral location for core subjects."  Compl., ¶ 74(f).  Thus, because H.C. was afforded the opportunity to progress in his core subjects with the assistance of a homebound teacher who would be assigned specifically to him, he has not alleged facts to demonstrate that "that the state or its agents deprived him of [a property] interest." <u>Doe v. Rector and Visitors of George Mason University</u>, 132 F. Supp. 3d 712, 719 (E.D. Va. 2015).[8]

Accordingly, Plaintiffs' have not been deprived of any property interest and the claims must be dismissed.

### 2.   H.C. received sufficient due process.

Even assuming, <u>arguendo</u>, that H.C. was deprived of a property interest, which he was not, he received sufficient due process.  When a student is completely excluded from the educational process (which H.C. was not), the student is entitled to only "rudimentary precautions" which include notice of the allegations and an opportunity to respond.  <u>Goss v. Lopez</u>, 419 U.S. 565, 581 (1975); <u>see also</u> <u>Wood v. Henry Cnty. Pub. Sch.</u>, 255 Va. 85, 92, 495 S.E.2d 255 (1998).  Moreover, the Court in <u>Goss</u> recognized "that there are recurring situations in which prior notice and hearing cannot be insisted upon. Students whose presence poses a continuing danger to persons or property or an ongoing threat of disrupting the academic process may be immediately removed from school. In such cases, the necessary notice and rudimentary hearing should follow as soon as practicable."  <u>Id.</u>

To be sure, unlike the plaintiff in <u>Goss</u>, H.C. was not suspended and, therefore, is not even arguably entitled to the same amount of process.  However, the Plaintiffs have alleged in

---

[8] Moreover, before the threat assessment team's decision to provide homebound educational services could be implemented, Mr. and Mrs. C. withdrew H.C. from Mathews County Public Schools in order to homeschool him. Therefore, he was never actually deprived of any opportunity to receive a public education. <u>See</u> Ex. 1, Report; Ex. 2, Letter.

their Complaint facts that demonstrate that they were offered an opportunity to respond to the allegations one day after the threat assessment team met and before the decision was implemented.[9]  Indeed, Plaintiffs allege that on August 28, 2019, Byrd met with Mr. and Mrs. C. to discuss the conclusions of the threat assessment.  Compl., ¶ 76.   While Plaintiffs complain that Byrd offered no "name-clearing" hearing, Compl. ¶ 77, such a formal process is not required.  Goss, 419 U.S. at 581.  All that is required is notice and an opportunity to respond which, in accordance with Goss, can be offered after the fact, particularly in cases, like this one, which involve a threat of danger.  Id.  Byrd provided that opportunity on August 28, 2019.  Compl., ¶ 76.  Following Byrd's meeting with Mr. and Mrs. C., Welch notified Plaintiffs by letter dated September 11, 2019 of the final decision.  Compl., ¶ 83.

For the foregoing reasons, H.C. was afforded all the process that is due a student who is not even subject to "total exclusion from the educational process" and, therefore, his procedural due process claim must be dismissed.

B.  <u>Plaintiffs' liberty interest claim must be dismissed.</u>

Plaintiffs allege that that their liberty interests in "their good names, reputations, honor, and integrity and in the freedom to engage in educational and employment opportunities" are implicated.[10]  Compl., ¶ 117.  Plaintiffs further allege that "Defendants concluded that H.C. (and, thus, Mr. and Mrs. C)[11] was an 'imminent threat; and, in so many words, a criminal, racist, and

---

[9] In addition, according to the Threat Assessment Report, the Plaintiffs were contacted the week prior to the threat assessment, on August 22, 2019, and were told by Byrd that the team wanted to meet with them.  Mr. C. told Byrd that he was out of town and would call her back but he never did.  Ex. 1, Report at 2.  Furthermore, the Threat Assessment Report also indicates that Edwards, a member of the threat assessment team, attempted to speak with H.C. about the allegations but that Mr. C. refused to allow him to speak with investigators.  Ex. 1, Report at 6.

[10] There are, however, no facts alleged that the "good names, reputations, honor and integrity" or "the freedom to engage in educational and employment opportunities" of Mr. or Mrs. C. have been implicated in any way.  Accordingly, their liberty interests claims must be rejected out of hand.

[11] The allegation that Mr. and Mrs. C. were perceived to be a threat is conclusory and need not be accepted as true.  Kelley, 580 F. Supp. 2d at 492.

sexual deviant in need of psychological interventions and quarantine," Compl. ¶ 123, and that

"admissions officers at schools and post-secondary institutions to which H.C. will enroll in the

future, including but not limited to the United States Naval Academy, will have access to, learn

of, or otherwise view the conclusions in H.C.'s student record."  Compl., ¶ 131.  Thus, Plaintiffs

conclude, "H.C.'s educational (and employment) opportunities are and will be foreclosed."  Id.[12]

The Supreme Court, in Wisconsin v. Constantineau, 400 U.S. 433, 437 (1971),

recognized a liberty interest "[w]here a person's good name, reputation, honor, or integrity is at

stake because of what the government is doing to him."  In Paul v. Davis, 424 U.S. 693 (1976),

however, the Court clarified that damage to a person's reputation only gives rise to a protected

liberty interest if the injury to reputation (stigma) is accompanied by state action that distinctly

altered or extinguished a legal status or right (plus) – this is known as the "stigma-plus"

standard.  Id. at 709-711; see also Echtenkamp v. Loudoun Cnty. Pub. Sch., 263 F. Supp. 2d

1043, 1057 (E.D. Va. 2003) (holding that plaintiff did not state a liberty interest claim because

"publication of stigmatizing charges alone, without damage to tangible interests such as

employment, does not invoke the due process clause. Rather, there must by some damage to

plaintiff's employment status.") (internal citations omitted).

In an apparent attempt to satisfy the "stigma-plus" standard Plaintiffs have included

references to their alleged "freedom to engage in educational and employment opportunities"

and otherwise refer to H.C.'s future opportunities.  These allegations, however, fall short.

One's future educational opportunities are not a cognizable liberty interest.  See e.g. M.B.,

2017 WL 1364214, *10 (holding that the plaintiff's "post-high school future and his ability to

---

[12] Plaintiffs also make the wildly speculative allegation that "should H.C. apply for a job or the military, he will likely be asked and have to disclose whether he had ever been charged with a felony, causing further rejection."  Id. (emphasis added).  Because neither the School Board nor Welch, Byrd, or McCuiston were responsible – or even have the authority – to charge H.C. with any crime, this allegation cannot form the basis of any claim against these Defendants.

obtain admission to the college of his choice" are not cognizable liberty interests.")  Likewise, future employment interests cannot for the basis of a liberty interest claim.  See e.g., Ridpath v. Board of Governors Marshall University, 447 F.3d 292, 309 n.16 (4th Cir. 2006) ("Accordingly, under what is sometimes referred to as its "stigma plus" test, the Paul Court instructed that no deprivation of a liberty interest occurs when, in the course of defaming a person, a public official solely impairs that person's future employment opportunities, without subjecting him to a present injury such as termination of government employment.") (citing Paul v. Davis, 424 U.S. 693, 709 (1976)).

Because Plaintiffs have alleged nothing more than injury to reputation (stigma) and have not alleged any state action that distinctly altered or extinguished a legal status or right (plus), Plaintiffs have not met the "stigma-plus" standard that is required.  Accordingly, Plaintiffs' liberty interest claims must fail.

**VI.    The substantive due process claims asserted in Count I must be dismissed as against the School Board, Welch, Byrd, and McCuiston.**

Substantive due process "protects against government power arbitrarily and oppressively exercised" either legislatively or executively. Cty. of Sacramento v. Lewis, 523 U.S. 833, 846 (1998). As the Supreme Court of the United States stated in Lewis, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Id.  Indeed, in evaluating substantive due process claims, the courts first consider the "threshold question whether [the] act was, under the circumstances, 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Hawkins v. Freeman, 195 F.3d 732, 741 (1999) (citing Lewis, 523 U.S. at 847, n.8).  To state a viable claim, the conduct must be "'intended to injure in some was unjustified by any governmental interest.' And, because specific conduct that in one context would meet the test might not in another, application of this standard 'demands an

exact analysis of circumstances.'" Hawkins, 195 F.3d at 742 (citing Davidson v. Cannon, 474 U.S. 344, 348 (1986)) (emphasis in original).

In Wolf v. Fauquier County Board of Supervisors, 55 F.3d 311 (4th Cir. 2009), the U.S. Court of Appeals for the Fourth Circuit upheld a grant of summary judgment in favor of the defendants in a case in which the plaintiff alleged that department of social services (DSS) employees, among other things, made false allegations against plaintiff, rejected plaintiff's attempts to explain that the report of child abuse under investigation was false, refused to conduct a complete investigation, and created a false affidavit. The Fourth Circuit held that the DSS defendants' conduct did not shock the conscience and, therefore, no constitutional right was violated. Indeed, the Court noted that the DSS defendants "responded to a complaint suggesting the possibility of serious harm and proceeded to investigate and take steps to assure the safety of children that might have been in danger. Despite the plaintiffs' attempts to paint DSS's actions as abusive, the investigation does not seem irregular, let alone conscience-shocking." Id. at 323.

Like the DSS defendants in Wolf, the School Board, Welch, Byrd, and McCuiston are not alleged to have engaged in any behavior that shocks the conscience. Indeed, as in Wolf, these Defendants were acting on a report of serious behavior that put other students in danger. Specifically, Plaintiffs have alleged that C.B. reported that H.C. attempted to assault him at a sleepover. Compl., ¶ 41. While Plaintiffs allege that C.B.'s reports were false, there is no allegation that the School Board, Welch, Byrd, or McCuiston knew that C.B.'s allegations were false. See Compl., generally. Knowing this information[13] and upon learning that Plaintiffs were

---

[13] As evidenced by the Threat Assessment Report, the threat assessment team had additional concerning information regarding H.C., including the sexual nature of the specific allegation by C.B. and that subsequently a third child reported that H.C. had a knife and threatened to kill C.B. because he had told (his parents, presumably) about the prior attempted assaults. Moreover, more recently, the Acting Headmaster of Ware Academy reported that H.C. had engaged in some serious incidents of misconduct including a racially motivated incident and an alleged incident of sexual misconduct and that H.C. could not return to that school unless he received counseling. Alone or taken together, each of these allegations warrants conducting a threat assessment. See Ex. 1.

enrolling H.C. in the public schools, these Defendants were obligated by section 22.1-79.4 of the Code of Virginia to conduct a threat assessment to determine whether H.C. posed a threat to the safety of C.B. or other students.  That the Plaintiffs disagree with the process or outcome of the threat assessment does not make it "conscience-shocking."  Accordingly, Plaintiffs' substantive due process claim should be dismissed.

**V.   Count II must be dismissed as against the School Board, Welch, Byrd, and McCuiston because Plaintiffs have not alleged facts that support a claim for conspiracy to interfere with civil rights.**

In Count II, Plaintiffs allege that Defendants engaged in a conspiracy to interfere with Plaintiffs' civil rights, in violation of 42 U.S.C. § 1985 and brought pursuant to 42 U.S.C. § 1983.  See Complaint at ¶ 144.  Plaintiffs have not alleged facts sufficient to state a claim that any of the Defendants conspired to interfere with the civil rights of any of the Plaintiffs.

To state a claim for conspiracy to violate civil rights, a plaintiff must allege:

(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy.

Thomas v. The Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016).

As demonstrated below, the Plaintiffs have not alleged facts sufficient to demonstrate the first, second, or third elements of this claim.  First, Plaintiffs have not alleged facts sufficient to demonstrate the existence of a conspiracy.  As the Supreme Court of the United States has recognized, a plaintiff must plead more than "parallel conduct and a bare assertion of conspiracy …Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  Twombly, 550 U.S. at 556–57.  A plaintiff asserting a conspiracy claim must allege

"concrete facts" rather than "conclusory allegations."  Smith v. Town of S. Hill, No. 3:19CV46, 2020 WL 1324216, at *25 (E.D. Va. Mar. 20, 2020).  Plaintiffs' Complaint does not meet this high bar.  Rather, the allegations of conspiracy are entirely conclusory and devoid of any specific facts demonstrating the existence of a conspiracy.

Second, there are no allegations that any Defendant was "motivated by a specific class-based, invidiously discriminatory animus."  See Thomas, 841 F.3d at 637.  Plaintiffs make "no mention of specific instances of conduct by the Defendants that could be perceived as racially discriminating" or discriminating on some other protected class, and so has not stated all the necessary elements for a conspiracy claim.  See Patterson v. McCormick, No. 2:13-cv-293, 2014 WL 2039966, at *8 (E.D. Va. May 15, 2014).  Indeed, the mere recitation of H.C.'s race and the race of some of the persons involved in the threat assessment process would be insufficient, and Plaintiffs do not even allege that much.  See id.; see also Tomasello v. Greenzweig, No. 1:20-cv-299, 2020 WL 2473882, at *11 (E.D. Va. May 13, 2020); Davis v. Hudgins, 896 F. Supp. 561, 571 (E.D. Va. 1995).

Third, as demonstrated supra, because the Plaintiffs have not alleged that they were deprived of any Constitutionally protected right the conspiracy claim must fail.  Mayers v. Smith, No. CIV.A. 00-1961-AM, 2002 WL 32502356, at *5 (E.D. Va. Apr. 4, 2002), aff'd, 46 F. App'x 208 (4th Cir. 2002) (holding that § 1985 claim was moot where there was no violation of plaintiff's civil rights).

Finally, assuming, arguendo, that Plaintiffs alleged sufficient facts to state a claim pursuant to § 1985, which they have not done, the doctrine of intracorporate immunity bars their claim.  As this Court has recognized, "[t]he doctrine of intracorporate immunity recognizes that a conspiracy, by definition, requires two or more persons and that, because a

corporation and its agents comprise a single legal entity, they are legally incapable of conspiracy.  Lewin v. Cooke, 95 F. Supp. 2d 513, 525-26 (E.D. Va. 2000) (citations omitted). See also Lindsey v. Jewett, 2020 WL 4036198, *4 (E.D. Va. 2020) ("[u]nder the doctrine of intracorporate immunity, a 'corporation cannot conspire with itself any more than a private individual can.' The doctrine 'deems multiple defendants a single entity for the purpose of analyzing a civil conspiracy claim if such defendants are employees or agents of the same entity and are acting within the scope of their employment/agency.'") (citing Buschi v. Kirven, 775 F.2d 1240, 1251 (4th Cir. 1985); Vollette v. Watson, 937 F. Supp. 2d 706, 727 (E.D. Va. 2013)).

All of the individual Defendants except Edwards are employed by the School Board, which is also a Defendant.  See Compl., ¶¶ 4-6, 8-9.   While Edwards is not employed by the School Board, Compl., ¶ 7, as a law enforcement officer she was a part of the threat assessment team, pursuant to Va. Code ¶ 22.1-79.4, and the threat assessment team was established by the superintendent pursuant to § 22.1-79.4 and School Board policy.  Compl., ¶¶ 59, 61; see also Va. Code 22.1-79.4.  Therefore, all of the Defendants were acting as either employees or agents of the School Board with respect to the actions of the threat assessment team.  Accordingly, Plaintiffs § 1985 conspiracy claim must fail for this additional reason.

For all of these reasons, Count II must be dismissed.

## VI.    Defendants Welch, Byrd, and McCuiston have civil immunity pursuant to Va. Code § 8.01-47 from the state law claims asserted against them in Counts III, VI, and VII.

Section 8.01-47 of the Code of Virginia provides that "any person who, in good faith with reasonable cause and without malice, acts to report, investigate or cause any investigation to be made into the activities of any student or students or any other person or persons as they relate to … information that an individual poses any credible danger of serious bodily injury or death to

one or more students, school personnel, or others on school property shall be immune from all civil liability that might otherwise be incurred or imposed as the result of the making of such a report, investigation or disclosure."

All of Plaintiffs' claims against Defendants Welch, Byrd, and McCuiston arise out of the threat assessment process, see Compl., generally, which provides for "the assessment of and intervention with individuals whose behavior may pose a threat to the safety of school staff or students."  Va. Code § 22.1-79.4.     Although Plaintiffs' Complaint is replete with conclusory actions of bad faith and malice, there are no factual allegations to support those conclusions and, therefore, such conclusions are entitled to no presumption of truth."  Kelley, 580 F. Supp. 2d at 492.  Accordingly, all three individuals are entitled to immunity from civil liability including on Plaintiffs' state law claims.

## VII.    The defamation claim (Count III) must be dismissed as against Welch, Byrd, and McCuiston.

In Count III, Plaintiffs assert a state law defamation claim against "All Defendants Except Defendants [sic] MCSB."  Specifically, Plaintiffs allege generally that "Defendants" published the following seven defamatory statements as part of the threat assessment process:

1.    H.C. was "frequently put out of school for behaviors including racial comments, lining up black children to berate them, called a student [the 'n' word]";

2.    "[H.C.] shoved a black child against the locker or wall giving that student a concussion";

3.    H.C. was subjected to "disciplinary action" at Ware Academy for a "racially-motivated incident";

4.    H.C. was involved in an "Spring 2019 alleged incident at Ware Academy involving sexual misconduct";

5.    "[H.C.] must attend intensive-counseling by a licensed professional counselor to address threats to others, sexual aggression and racially based hate crimes";

6.      H.C.'s "pattern of behaviors are [sic] extremely concerning"; and

7.      H.C. is an "imminent threat."

Compl., ¶¶152(a) – (g).

Plaintiffs, however, do not attribute any of these seven statements directly to Defendants Welch, Byrd, and McCuiston.  See generally Compl.  Accordingly, it is virtually impossible to determine who specifically said what and to whom from among all of the individual "Defendants," and more importantly, how, in what specific manner, and with what requisite intent did Defendants Welch, Byrd, and McCuiston allegedly publish, if at all, any of the seven allegedly defamatory statements.  See generally, Compl.  Because these missing facts are necessary in order to form the essential elements for a defamation claim, see Jordan v. Kollman, 269 Va. 569,  (Va. 2005) (holding that the elements of  a defamation claim are "(1) publication of (2) an actionable statement with (3) requisite intent.") (citation omitted), the lack of specificity in the Complaint regarding these issues must necessarily result in the dismissal of Count III as to Defendants Welch, Byrd, and McCuiston.[14]  See Compel v. City Mortgage Inc., No. 1:04-cv-01377-LMB, 2005 WL 4904816, *1 (E.D. Va. Feb. 23, 2005) (dismissing the complaint because it "fails to identify which specific statements plaintiff considers defamatory or libelous, as well as how these statements were published, when they were published, and to whom.") (citing Dwyer v. Smith, 867 F.2d 184 (4th Cir. 1989); Thalhimer Bros. v. Shaw, 156 Va. 863 (Va.

---

[14] Moreover, statements 6 and 7 are not actionable as defamatory statements because they are expressions of opinion.  Count III identifies statement 6 as, "H.C.'s 'pattern of behaviors are [sic] extremely concerning,'" and statement 7 as, "H.C. is an 'imminent threat.'"  Both statements are expressions of opinion because both rely on the viewpoint of the speaker (i.e., whether the speaker believed H.C.'s behavior to be "extremely concerning" or an "imminent threat.").  See Jordan, 269 Va. at 576 ("Statements that are relative in nature and depend largely upon the speaker's viewpoint are expressions of opinion.") (citation omitted).  Indeed, both inquiries are relative in nature and depend entirely on the speaker's subjective beliefs about the nature of H.C.'s behaviors.  Thus, statements 6 and 7 are nonactionable expressions of opinion and cannot form the basis of the defamation claim.  See, e.g., Dragulescu v. Virginia Union Univ., 223 F. Supp. 3d 499, 510 (E.D. Va. 2016) ("The statements that Dragulescu spoke 'disparagingly,' had a 'meltdown' or 'temper tantrum,' or did not 'properly contribute to the HBCU mission' are '[s]atements that are relative in nature and depend largely upon the speakers' viewpoint.'") (citation omitted).

1931)); see also Aziz v. Alcolac, Inc., 658 F.3d 388, 391 (4th Cir. 2011) ("To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiffs' [f]actual allegations must be enough to raise a right to relief above the speculative level, 'thereby nudg[ing] their claims across the line from conceivable to plausible.'") (quoting Twombly, 550 U.S. at 555).

Moreover, the defamation claim also must be dismissed because it is barred by the statute of limitations.  In Virginia, the statute of limitations for defamation is one year.  See Va. Code § 8.01-247.1 ("Every action for injury resulting from libel, slander, insulting words, or defamation shall be brough within one year after the cause of action accrues.").  "Any cause of action that a plaintiff has for defamation accrues on the date that the defamatory acts occurred."  Askew v. Collins, 283 Va. 482, 487 (Va. 2012).  In other words, the cause of action for defamation accrues on the date that "the allegedly defamatory statements were published."  Lokhova v. Halper, 441 F. Supp. 3d 238, 252 (E.D. Va. 2020) (citing Hatfill v. New York Times Co., 416 F.3d 320, 334 (4th Cir. 2005)).  Because Plaintiffs filed the Complaint on September 28, 2020, only those statements that were published on or before September 28, 2019 can form the basis of the defamation claim.

While Plaintiffs do not identify the precise date on which the seven allegedly defamatory statements identified in Count III were published, Plaintiffs acknowledge that they allegedly were made "[i]n the course of the threat assessment process," Compl. ¶ 152, which began on or around May 14, 2019 and completed on August 28, 2019, when the findings were presented to Plaintiffs.  Compl., ¶¶ 65, 76.  Accordingly, the latest date on which the defamatory statements could have been published would be on August 28, 2019.  Compl. ¶76.  Because the identified defamatory statements allegedly were made before September 28, 2019, the defamation claim is barred by the statute of limitations.

In an attempt to save this claim, Plaintiffs cavalierly allege in a conclusory fashion that Defendants, "upon information and belief, republished [the statements] between August 27, 2019 and November 25, 2019, to others who had no legitimate interest or duty in them."  Compl. ¶ 157.   This conclusory allegation, however, does not save Plaintiffs' case.  As an initial matter, it has long been established that "Virginia follows the 'single publication rule,' which permits only one cause of action to be maintained for any single publication, even if heard or read by two or more third persons." Katz v. Odin, 332 F. Supp. 2d 909, 918 (E.D. Va. 2004) (citing Morrissey v. William Morrow Co., 7739 F.2d 962 (4th Cir. 1984); Restatement (Second) of Torts § 557A(4) (1997)).  For example, in Katz, the court rejected the argument that every distinct viewing of a defamatory letter constituted a separate publication.  Id. at 917-18.  Accordingly, the fact that a previously published letter was republished several times in the course of an arbitration proceeding did not create additional causes of action.  Id.; see also Semida v. Rice, 863 F.2d 1156, 1161 (4th Cir. 1988) (holding that a defamatory letter was not "republished" when an employee merely sent a copy of a file containing the letter to another office, even though the transmission exposed the defamatory statements to third persons).

While some courts have recognized the "republication doctrine" as an exception to the single publication rule, see Lokhova, 44 F. Supp. 3d at 254-55 (collecting and discussing cases) (citations omitted), the conclusory allegation in Paragraph 157 of the Complaint fails to provide any detail about which specific defamatory statements were republished, how they were republished, the precise date on which they were republished, or by and to whom they were republished and with what intent.  This failure is fatal to Plaintiffs' attempt at reviving the claim through the "republication" exception.  See Compel, 2005 WL 4904816, *1 (dismissing the complaint because it "fails to identify which specific statements plaintiff considers defamatory or

libelous, as well as how these statements were published, when they were published, and to whom.") (citations omitted); see also Aziz, 658 F.3d 388, 391 (4th Cir. 2011) ("To survive a motion to dismiss pursuant to Rule 12(b)(6), plaintiffs' [f]actual allegations must be enough to raise a right to relief above the speculative level, 'thereby nudg[ing] their claims across the line from conceivable to plausible.'") (citation omitted).  Accordingly, Count III must be dismissed for this additional reason.

Finally, Count III must be dismissed as to Defendants Welch, Byrd, and McCuiston for the additional reason that the allegedly defamatory statements were made during the threat assessment process—a statutorily mandated process under Va. Code § 22.1-79.4—and, therefore, are protected by a qualified privilege.  "[I]t is well settled under Virginia law that '[c]ommunications between persons on a subject in which the persons have an interest or duty are occasions of privilege….'" Echtenkamp v. Loudoun Cnty. Pub. Sch., 263 F. Supp. 2d 1043, 1061 (E.D. Va. 2003) (quoting Larimore v. Blaylock, 259 Va. 568, 572 (Va. 2000)).  "It is also settled that this privilege is qualified and is lost 'if a plaintiff process by clear and convincing evidence that the defamatory words were spoken with common-law malice.'" Id. (quoting Southeastern Tidewater Opportunity Project, Inc. v. Bade, 246 Va. 273, 276 (Va. 1993)).  "Common-law malice, in turn, is 'behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.'" Id.  "Thus, in order to state a claim for defamation, plaintiff must allege facts sufficient ultimately to support a finding by clear and convicting evidence" to establish malice and cannot simply rely on conclusory allegations.  Id. at 1062.

For example, in dismissing a defamation claim on a motion to dismiss, the Echtenkamp court held that "plaintiff's repeated assertions that each defendant charged with defamation acted

'with malice' and with a 'motive of personal spite and revenge' are not, by themselves, sufficient to state a claim of malice sufficient to overcome the qualified privilege." Id. Like Echtenkamp, Plaintiffs here too failed to identify with any specificity how Defendants Welch, Byrd, and McCuiston acted with common-law malice to overcome the qualified privilege. See generally Compl. Accordingly, the defamation claim also must be dismissed on this additional ground.

For these reasons, Count III must be dismissed as to Defendants Welch, Byrd, and McCuiston.

**VIII.   The claim for intentional infliction of emotional distress (Count VI) must be dismissed as against Welch, Byrd, and McCuiston.**

To establish a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe. Almy v. Grisham, 273 Va. 68, 77 (2007). Moreover, "[b]ecause of problems inherent in proving a tort alleging injury to the mind or emotions in the absence of accompanying physical injury, the tort of intentional infliction of emotional distress is 'not favored' in the law." Id. As set forth below, the Plaintiffs have not alleged facts to establish the first, second and fourth elements of the cause of action and the claim must, therefore, be dismissed.

In order to establish the first element, that the defendants acted intentionally or recklessly, a plaintiff must plead facts to show that the defendant not only acted intentionally or recklessly but that the defendant acted with the intent to cause emotional distress or acted recklessly, such that they should have known their actions would likely cause emotional distress. Almy, 273 Va. at 78 (granting demurrer because "Almy fails to allege in her motion for judgment, however, that Liebman and Wong engaged in conduct with the intent to cause Almy

emotional distress. Likewise, Almy's pleadings do not contain allegations that the actions of Liebman and Wong were reckless, such that they knew or should have known their act of writing a false report likely would cause Almy severe emotional distress.)

While Plaintiffs make the blanket and conclusory allegation that "Defendants' conduct alleged herein was intentional or reckless, such that they knew or should have known it would cause Plaintiffs severe emotional distress," Compl. ¶ 178, there are, however, no <u>factual</u> allegations to support this conclusion with respect to Welch, Byrd, or McCuiston.  Indeed, although Plaintiffs allege that C.B.'s claims about H.C.'s conduct were false, there is no allegation that Welch, Byrd, or McCuiston knew C.B.'s claims, on which the threat assessment were based, were false.[15]  Because the <u>facts</u> alleged do not demonstrate that Welch, Byrd, or McCuiston acted intentionally or recklessly to cause the Plaintiffs emotional distress, the claim must be dismissed.

To establish the second element of a claim for intentional infliction of emotional distress, a plaintiff must also demonstrate that the defendant's conduct is sufficiently outrageous and intolerable and "it is insufficient for a defendant to have 'acted with an intent which is tortious or even criminal.'"  <u>Russo v. White</u>, 241 Va. 23, 27 (1991) (citations omitted).  Indeed, "[e]ven if a defendant 'has intended to inflict emotional distress,' or his conduct can be 'characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort,' the requirement of the second prong has not been satisfied.  <u>Id.</u>  Rather, "[l]iability

---

[15] Moreover, while Plaintiffs assert that the Defendants did not request their input in the threat assessment process, Compl. ¶ 77, that allegation is contradicted by the threat assessment report, which indicates that, on August 22, 2019, five days before the threat assessment team convened, Byrd called Mr. C. to request a meeting to discuss concerns with H.C.'s history.  Mr. C., who was out of town at the time, said he would call Byrd back but never did. Ex. 1 at 2.  Accordingly, Plaintiffs were offered an opportunity to provide input but did not do so.  Moreover, according to the threat assessment report, Edwards, who had investigated C.B.'s allegations and who was a member of the threat assessment team, reported to the team that Mr. C. would not allow H.C. to speak with investigators. Ex. 1 at 6. Thus, again, revealing that Plaintiffs had an opportunity to provide information relevant to C.B.'s allegations but refused to do so.

has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Id.

Plaintiffs have failed to allege facts to show that the conduct of Welch, Byrd, or McCuiston was sufficiently outrageous or intolerable.  Plaintiffs again make the conclusory allegation that, collectively, the Defendants' behavior was "outrageous," Compl., ¶ 181, but there are no specific facts alleged as to Welch, Byrd, or McCuiston that is sufficiently outrageous or intolerable so as to support a claim for intentional infliction of emotional distress.  As noted above, there is no allegation, nor could there be, that Welch, Byrd, or McCuiston knew C.B.'s allegations to be false.  Accordingly, at best, Plaintiffs have alleged that Welch, Byrd, and McCuiston supported their colleague, Crowder, who is C.B.'s mother, Compl., ¶¶ 27, 45  that they apparently believed the allegations C.B. made, Compl., ¶ 69, which were indisputably very serious in nature, that they were dissatisfied with Kellar's handling of the matter and believed that Plaintiffs had not complied with requirements, which they believed were imposed, that they obtain counseling for H.C., Compl., ¶ 53, 81.  Accordingly, in accordance with state law and School Board policy, they convened and participated in a threat assessment which, Plaintiffs allege, was for the purpose of punishing H.C., against whom they had developed a bias. [16] Compl., ¶¶ 57-58. As a result, H.C. was required to attend school via homebased instruction for a period of two months, during which he was to receive counseling and other supports.  Compl., ¶ 74.

These alleged actions fall far short of the outrageous and intolerable conduct  that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

---

[16] Moreover, even if the threat assessment was conducted for the purpose of "punishing" H.C., as Plaintiffs allege, punishing a student who is believed to have committed assaults and made threats is not so outrageous so as to constitute intentional infliction of emotional distress.

decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"
Russo, 241 Va. at 27.   Therefore, Plaintiffs have failed to establish the third element of the
disfavored claim of intentional infliction of emotional distress.

To establish the fourth element of a claim of intentional infliction of emotional distress, a
plaintiff must establish that he suffered "extreme" emotional distress that is "so severe that no
reasonable person could be expected to endure it."  Russo v. White, 241 Va. 23, 27 (1991)
(internal citations omitted).  In Russo, the Supreme Court of Virginia held that the plaintiff failed
to adequately plead sufficiently extreme emotion distress where there was "no claim, for
example, that she had any objective physical injury caused by the stress, that she sought medical
attention, that she was confined at home or in a hospital, or that she lost income. Id. at 28.

Like the plaintiff in Russo, the Plaintiffs have not alleged that H.C. suffered any objective
physical injury, sought medical attention, was confined or lost income.  Plaintiffs allege that they
suffered "anxiety, bouts of depression, despair, distress, disruption, embarrassment, exclusion,
fear, harassment, humiliation, isolation, mood swings, ostracism, pain and suffering, shame and
stigma." [17] See Compl., ¶ 185.  This is wholly insufficient to make out a claim for intentional
infliction of emotional distress.  Accordingly, the claim must be dismissed.

## IX.   The claim for gross negligence (Count VII) must be dismissed as against Welch, Byrd, and McCuiston.

Count VII asserts a gross negligence claim against the individual Defendants.[18]
Specifically, Plaintiffs allege that "Defendants owed a duty to exercise reasonable care toward

[17] The allegations, also conclusory, regarding loss of income can relate only to Mr. and Mrs. C. who are not proper parties to this action.  See surpa. These allegations have no bearing on the claims asserted by H.C., a fourteen-year-old boy.
[18] Indeed, it cannot be asserted against the School Board because the School Board, as a political subdivision and an arm of the state, enjoys sovereign immunity from tort claims.  See Kellam v. Sch. Bad of City of Norfolk, 202 Va. 252, 254 (Va. 1960) ("[T]he basis for school board's immunity from liability for tortious injury has been generally found in the fact that it is a governmental agency or arm of the state and acts in a governmental capacity in the performance of its duties imposed by law.").

Plaintiffs and their well-being in the course and scope of their threat assessment process." Compl. ¶ 188.  To prove gross negligence under Virginia law, Plaintiffs must show the basic elements of negligence: "a legal duty, a violation of the duty, and a consequent injury." Chesapeake & Potomac Tel. Co. of Va. v. Dowdy, 235 Va. 55, 61 (Va. 1998) (citation omitted). "The finding of a legal duty is a prerequisite to a finding of negligence." Quisenberry v. Huntington Ingalls, Inc., 296 Va. 233, 241 (Va. 2019) (internal quotation marks and citation omitted).  "There can be no actionable negligence unless there is a legal duty…." Chesapeake, 235 Va. at 61 (emphasis added).

If a duty exists, under Virginia law, gross negligence is "a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person." Elliott v. Carter, 292 Va. 618, 622 (Va. 2016) (citation and internal quotation marks omitted).  Gross negligence "is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care." Id. (citation omitted).  Indeed, gross negligence "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." Id. (citation and internal quotation marks omitted).  "Because the standard for gross negligence [in Virginia] is one of indifference, not inadequacy, a claim for gross negligence must fail as a matter of law when the evidence shows that the defendants exercised some degree of care." Fijalkowski v. Wheeler, 361 F. Supp. 3d 577, 593 (E.D. Va. 2019) (internal citations and quotations omitted).

As demonstrated below, Count VII must be dismissed as to Defendants Welch, Byrd, and McCuiston for two reasons.  First, it must be dismissed because Plaintiffs have not alleged a cognizable duty under Virginia law.  Second, even if Plaintiffs have alleged a cognizable duty,

there are no facts allege to support that Defendants Welch, Byrd, and McCuiston engaged in any conduct that might constitute gross negligence.

Plaintiffs allege that "Defendants owed a duty to exercise reasonable care toward Plaintiffs and their well-being in the course and scope of their threat assessment process." Compl. ¶ 188.  No such duty has been recognized in Virginia.  To the contrary, if a duty exists at all in the course of conducting a threat assessment under Va. Code § 22.1-79.4—a statute designed to protect the health and well-being of victims who have been threatened violence or physical harm—that duty likely would exist only as to alleged victim, rather than the alleged aggressor such as Plaintiff H.C.  Cf. Hamilton v. Glemming, 187 Va. 309, 315 ("For the general duty imposed by the statute to become a particular duty owning to a particular person, he must be in a position which, under a reasonable construction and interpretation of the statute, brings him within the particular class of persons for whose protection from injury these provisions of it were enacted.").  In the absence of a recognized duty under Virginia law, Plaintiffs' gross negligence claim must be dismissed.  Chesapeake, 235 Va. at 61 ("There can be no actionable negligence unless there is a legal duty….") (emphasis added).

Even if there were a recognized duty "to exercise reasonable care… in the course and scope of the[] threat assessment process," the Plaintiffs' gross negligence claim still must be dismissed as to Defendants Welch, Byrd, and McCuiston because the Complaint is devoid of any fact to support that their conduct constituted gross negligence.  See generally Compl.  To the contrary, the Complaint contains facts that support the decision of Defendants Welch, Byrd, and McCuiston to institute and move forward with the threat assessment process.  For example, while Paragraph 44 of the Complaint alleges that "Defendant Crowder falsely reported that H.C. had bullied and attempted to assault C.B. in 2016 and also threatened C.B. in 2017,"  nowhere in the

Complaint does it allege that Defendants Welch, Byrd, and McCuiston knew that Defendant Crowder had falsely reported the incident.  See generally Compl.  Similarly, although Paragraphs 53 and 64 of the Complaint allege that Defendants Welch, Byrd, and McCuiston were "biased against H.C." based on their conversations and interactions with Defendant Crowder, there is nothing in the Complaint to suggest that Defendants Welch, Byrd, and McCuiston were aware that Defendant Crowder allegedly had fabricated the allegations against H.C.  See generally, Compl.  Based on the Defendant's Crowder report, Defendants Welch, Byrd, and McCuiston were statutorily mandated to institute the threat assessment process.  Va. Code § 22.1-79.4.  In other words, they were simply performing their duties as school employees.  At bottom, because Defendants Welch, Byrd, and McCuiston did not act with "an utter disregard of prudence that amounts to a complete neglect of the safety of such other person," Elliott, 292 Va. at 622, Count VII must be dismissed for this additional reason.

## CONCLUSION

WHEREFORE Defendants Mathews County School Board, Nancy Welch, Laurel Byrd, and Denise McCuiston respectfully requests that the Court enter an Order dismissing with prejudice Plaintiffs' Complaint, dismissing them from the case, and granting them such further relief as the Court may deem appropriate.

Respectfully submitted,

MATHEWS COUNTY SCHOOL BOARD,
NANCY WELCH, LAUREL BYRD, AND
DENISE MCCUISTON

By Counsel

/s/ Stacy L. Haney
Stacy L. Haney, Esq. (VSB 71054)
HANEY PHINYOWATTANACHIP PLLC
11 S. 12th Street, Suite 300C
Richmond, VA 23219
Tel:     (804) 500-0301
Fax:     (804) 500-0309
shaney@haneyphinyo.com

Counsel for Mathews County School Board,
Nancy Welch, Laurel Byrd, and Denise
McCuiston

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of October, 2020, I have electronically filed the

foregoing using the CM/ECF system, which will automatically send email notification of such

filing to counsel of record as follows:

Nicholas F. Simopoulos, Esq. (VSB No.  68664)
Simopoulos Law, PLLC
11 South 12th Street
Richmond, VA 23219
Tel: 804-220-5755
nicholas@simopouloslaw.com

William W. Tunner, Esq.
ThompsonMcMullan P.C.
100 Shockoe Slip, Third Floor
Richmond, VA 23219-4140
Tel: 804-649-7545
Fax: 804-780-1813
wtunner@t-mlaw.com

Jeremy D. Capps (VSB No. 43909)
Melissa Y. York (VSB No. 77493)
Harman, Claytor, Corrigan & Wellman
P.O. Box 70280 Richmond, Virginia 23255
Tel: 804-747-5200
Fax: 804-747-6085
jcapps@hccw.com
myork@hccw.com

/s/ Stacy L. Haney
Stacy L. Haney, Esq. (VSB 71054)
HANEY PHINYOWATTANACHIP PLLC
11 S. 12th Street, Suite 300C
Richmond, VA 23219
Tel:    (804) 500-0301
Fax:    (804) 500-0309
shaney@haneyphinyo.com

Counsel for Mathews County School Board,
Nancy Welch, Laurel Byrd, and Denise
McCuiston